ELECTRONIC CITATION:  2010 FED App. 0009P (6th Cir.)
File Name:  10b0009p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re:  DEBORAH K. SEAFORT | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FREDERICK C. SCHULER | ) | |
| and CARRIE A. SCHULER | ) | |
| | ) | |
| Debtors. | ) | Nos.    09-8062 |
| ——————————————— | ) | 09-8063 |
| | ) | |
| | ) | |
| BEVERLY M. BURDEN, | ) | |
| CHAPTER 13 TRUSTEE | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEBORAH K. SEAFORT | ) | |
| | ) | |
| and | ) | |
| | ) | |
| FREDERICK C. SCHULER and | ) | |
| CARRIE A. SCHULER | ) | |
| | ) | |
| Appellees. | ) | |
| ——————————————— | ) | |

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky
Case Nos. 08-22380 and 08-22417

Argued: May 4, 2010

Decided and Filed:  September 14, 2010

Before: BOSWELL, McIVOR, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

---

**COUNSEL**

**ARGUED:** Daniel Hitchcock, WYATT, TARRANT & COMBS, LLP, Lexington, Kentucky, for Appellant. Michael B. Baker, THE BAKER FIRM, PLLC, Florence, Kentucky, for Appellees. **ON BRIEF:** Daniel Hitchcock, WYATT, TARRANT & COMBS, LLP, Lexington, Kentucky, for Appellant. Michael B. Baker, THE BAKER FIRM, PLLC, Florence, Kentucky, for Appellees.

---

**OPINION**

---

MARCI B. McIVOR, Bankruptcy Appellate Panel Judge. In these consolidated appeals, Beverly M. Burden, Chapter 13 Trustee ("Trustee"), appeals the bankruptcy court's ruling that Debtors may use income which becomes available once 401(k) loans are repaid to commence making contributions to debtors' 401(k) plans. For the reasons stated in this opinion, the Panel concludes that post-petition income which becomes available after a debtor repays a 401(k) loan must be committed to the chapter 13 plan. Therefore, the bankruptcy court's rulings confirming the Debtors' chapter 13 plans are reversed. The cases are remanded for further proceedings consistent with this opinion.

## I.   ISSUE ON APPEAL

The issue raised in this appeal is whether a chapter 13 debtor who is repaying a 401(k) loan, but not making any 401(k) contributions at the time the bankruptcy petition is filed, may use the income which becomes available when the loans are repaid to start making contributions to debtor's 401(k) plan rather than committing the extra income to repay creditors.

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel has jurisdiction to decide this appeal. The United States District Court for the Eastern District of Kentucky has authorized appeals to the Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C.

§ 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations and internal quotations omitted). The order of the bankruptcy court confirming the Debtors' chapter 13 plans over the objections of the Trustee is a final, appealable order. *Gen. Elec. Credit Equities, Inc. v. Brice Rd. Devs., L.L.C.* (*In re Brice Rd. Devs., L.L.C.*), 392 B.R. 274, 278 (B.A.P. 6th Cir. 2008).

The bankruptcy court's legal conclusions, including its interpretation of the applicable statutes, are reviewed de novo. *Brice Rd. Develops., L.L.C.*, 392 B.R. at 277. "De novo means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A.* (*In re Periandri*), 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001) (citations omitted).

The court's findings of fact are reviewed under the clearly erroneous standard. *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940, 944 (6th Cir. 2007). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S. Ct. 1504, 1511 (1985)).

### III. FACTS

On November 20, 2008, Deborah Seafort filed a petition for relief under chapter 13 of the Bankruptcy Code. On November 25, 2008, Frederick C. Schuler and Carrie A. Schuler filed a joint petition for relief under chapter 13 of the Bankruptcy Code. At the time the debtors filed their respective petitions for relief, Deborah Seafort and Frederick C. Schuler (hereinafter collectively "Debtors") were both eligible participants in their respective employers' ERISA qualified 401(k) retirement plans. The Debtors were not making contributions to their plans at the time they filed for bankruptcy relief; however, each Debtor was repaying a 401(k) loan. Seafort was paying her loan at the rate of $254.71 per month, and Schuler was paying $815.86 per month.

The Debtors each filed a proposed chapter 13 plan which provided for a commitment period of five years. Under their respective proposed plans, the loans would be repaid in full before

completion of the plans.  The plans proposed to complete repayment of the loans and then continue payroll deductions as 401(k) contributions in the same amount as the loan payments.  The plan payments would not, therefore, increase after the loans were paid in full.  The Trustee objected to confirmation of both plans asserting that because the Debtors were not making 401(k) contributions as of the commencement of their bankruptcy cases the Debtors must increase their plan payments by the amount of the loan payments once the loans were paid in full.

The bankruptcy court consolidated the cases to determine whether the Debtors could exclude their proposed 401(k) contributions from projected disposable income which would otherwise be paid into their respective chapter 13 plans.  On June 22, 2009, the court issued a memorandum opinion and order concluding that the exclusion was permissible and that the Debtors' respective chapter 13 plans should be confirmed without modification.  On June 30, 2009, the Trustee moved the court to alter or amend its order.  The Trustee's motion was resolved by entry of an agreed order on October 5, 2009, which required the Debtors to provide certain documentary evidence to the Trustee regarding their 401(k) plans and established certain events which would require amendment of the plans during the applicable commitment period.  The Trustee's timely appeal followed.

## IV.   DISCUSSION

Prior to the adoption of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), a chapter 13 debtor could not make contributions to a 401(k) plan because such funds were considered disposable income which had to be committed to the chapter 13 plan. *Harshbarger v. Pees* (*In re Harshbarger*), 66 F.3d 775, 777-78 (6th Cir. 1995).  For the same reason, chapter 13 debtors were also prohibited from repaying a 401(k) loan during the life of a chapter 13 plan, regardless of any adverse consequences which might result from nonpayment.  *Id.*  The adoption of BAPCPA, however, resulted in several changes to the treatment of ERISA qualified employee benefit plans ("Qualified Plans").  In particular, BAPCPA amended § 541 to add subsection (b)(7) which allows debtors to shelter contributions to certain Qualified Plans from property of the estate.  As a result, a debtor may now exclude contributions to Qualified Plans, including contributions to a 401(k) plan, up to the permitted amount of the plan from his bankruptcy estate.  *In re Nowlin,* 366 B.R. 670, 676 (Bankr. S.D. Tex. 2007) (citing *In re Johnson*, 346 B.R. 256,

4

263 (Bankr. S.D. Ga. 2006)), *aff'd*, No. 07-2446, 2007 WL 4623043 (S.D. Tex. Dec. 28, 2007), *aff'd*, 576 F.3d 258 (5th Cir. 2009).  In addition, BAPCPA added subsection (f) to 11 U.S.C. § 1322 which prohibits a chapter 13 plan from altering the terms of a 401(k) loan and excludes "any amounts" used to repay loans from Qualified Plans from the calculation of a debtor's "disposable income."  11 U.S.C. § 1322(f).  In sum, BAPCPA changed the way contributions to Qualified Plans and loan payments to such plans are treated in chapter 13 cases.

BAPCPA also made changes to 11 U.S.C. § 1325, the Code section which spells out the requirements for confirmation of chapter 13 plans; however, the amendments did not directly address how to treat the income which becomes available when a 401(k) loan is repaid during the applicable commitment period.  The Fifth and Eighth Circuit Courts of Appeal have classified the resulting available funds as projected disposable income which must be committed to the debtor's chapter 13 plan.  *McCarty v. Lasowski* (*In re Lasowski*), 575 F.3d 815, 820 (8th Cir. 2009); *Nowlin v. Peake* (*In re Nowlin*)*,* 576 F.3d 258 (5th Cir. 2009).   However, no court has addressed the precise question presented by this appeal: whether a debtor, who was not contributing to an ERISA qualified plan when the case was filed, may begin making 401(k) contributions once the 401(k) loan has been repaid.

The Trustee makes three arguments in support of her position that the bankruptcy court erred in permitting these Debtors, who were not making contributions to their 401(k) plans at the commencement of their cases, to exclude the income which became available once their 401(k) loans were repaid from projected disposable income and then use that income to make contributions to a 401(k) plan.  First, pursuant to fundamental rules of statutory construction, the Trustee argues that chapter 13 debtors may only exclude contributions they are making to a 401(k) plan as of the commencement of their case from property of the estate and disposable income.  Second, the Trustee asserts that the Debtors' proposed plans did not comply with the projected disposable income requirements of § 1325(b)(1).  Lastly, the Trustee contends that the Debtors' plans were not proposed in good faith.

### A.  Property of the Estate and Exclusions from Property of the Estate

In determining the meaning of a statute, the Panel must first examine the plain language of the statute.  *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026, 1030 (1989).  "If the statutory language is unambiguous, . . . that language must ordinarily be regarded as conclusive."  *Reves v. Ernst & Young*, 507 U.S. 170, 177, 113 S. Ct. 1163, 1169 (1993) (citations omitted).  "When a statute is ambiguous, we look to its purpose and may consider the statute's policy implications in determining what Congress intended."  *Koenig Sporting Goods, Inc. v. Morse Rd. Co.* (*In re Koenig Sporting Goods, Inc.*), 203 F.3d 986, 989 (6th Cir. 2000).

Section 541(a)(1) provides:

> (a) *The commencement of a case* under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held:
>
>> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interest of the debtor in property *as of the commencement of the case.*

11 U.S.C. § 541(a)(1) (emphasis added).  The definition of "property of the estate" is exceptionally broad and designed to "'bring anything of value that the debtors have into the [bankruptcy] estate.'"  *Lyon v. Eiseman* (*In re Forbes*), 372 B.R. 321, 330 (B.A.P. 6th Cir. 2007) (citation omitted).  While reaching broadly to bring a wide variety of property into the estate, § 541 also provides for a number of exclusions.  Subsection (b) lists certain interests which may exist as of the commencement of the case, but are nevertheless excluded from property of the estate.  BAPCPA amended § 541(b) by adding subsection (b)(7) to the list of property which could be excluded from property of the estate.  Section 541(b)(7)  states:

> (b) Property of the estate does not include -
>
> . . . .
>
>> (7) any amount -

6

(A) withheld by an employer from the wages of employees for payment as contributions -

(i) to-

(I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;

. . . .

except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2)[.]

11 U.S.C. § 541(b)(7).

In this case, the bankruptcy court concluded that because § 541(b)(7) excludes contributions to a 401(k) plan from property of the estate and excludes the amount of those contributions from being considered disposable income, contributions which commence *after* the filing of the case must also be excluded from property of the estate. The Panel disagrees. The Panel concludes that the language of § 541(a) is clear. Property of the estate under § 541(a)(1) and exclusions from property of the estate under § 541(b) must both be determined on the date of the filing of the case. As provided in the statute, § 541(a) specifically states that "the commencement of a case . . . creates an estate." Section 541(b) excludes certain property from the definition of "property of the estate." Read together, § 541(a) and (b) establish a fixed point in time at which parties and the bankruptcy court can evaluate what assets are included or excluded from property of the estate. Section 541(a) clearly establishes this point as the commencement of the case. Therefore, only 401(k) contributions which are being made at the commencement of the case are excluded from property of the estate under § 541(b)(7). The Panel is not concluding that property which the debtor acquires after the commencement of the case is not subject to the Bankruptcy Code. Instead, the Panel holds that a debtor's ability to exclude property acquired post-petition from the claims of creditors is not controlled by 11 U.S.C. § 541.

7

This Panel's construction of § 541(a) and (b) is consistent with the manner in which "property of the estate" is defined in a Chapter 13 bankruptcy proceeding. Section 1306 provides:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title -
>
> > (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title whichever occurs first; and
> >
> > (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title whichever occurs first.

11 U.S.C. § 1306. Notably, this section, which addresses property and earnings that come into existence *after* the debtor files a petition for relief does not exclude 401(k) contributions from property of the estate. Rather, 401(k) contributions are only excluded in § 541 which specifically applies to property in existence at the commencement of the case. Because Congress identified 401(k) contributions as excluded in § 541, but not in § 1306, the Panel concludes that the absence of any reference in § 1306 to 401(k) contributions was intentional. *Hildebrand v. Petro* (*In re Petro*), 395 B.R. 369, 375 (B.A.P. 6th Cir. 2008) ("If a statute uses a particular phrase in one section, but not in another, courts should assume the inclusion or exclusion to have been intentional.") Congress did not intend for income which becomes available post-petition to be excluded from property of the chapter 13 estate or from the calculation of projected disposable income.

The Panel's conclusion that § 541(b)(7) does not exclude income which becomes available post-petition in order to start making contributions to a 401(k) plan, is also supported by the language in § 541(b)(7) and its reference only to "disposable income." Conspicuously, § 541(b)(7) makes no reference to "projected disposable income." Projected disposable income is based on debtor's income as of confirmation and also allows for "consideration of reasonably certain future events." *Nowlin v. Peake* (*In re Nowlin*), 576 F.3d 258 (5th Cir. 2009). Had Congress intended to protect income which becomes available *after* the petition is filed, Congress could easily have

8

written § 541(b)(7) to read "any amount withheld by an employer . . . shall not constitute disposable income as defined in 11 U.S.C. § 1325(b)(2) or projected disposable income under § 1325(b)(1)(B)." Income which becomes available after the filing of a case is "projected disposable income" and that income is not excluded from property of the estate.  Projected disposable income must be used to pay creditors pursuant to § 1325(b)(1)(B) and may not be used to commence making payments to a 401(k) plan.

This Panel's construction of § 541(a) and (b) and § 1325 is also consistent with the stated objective of BAPCPA.  A primary objective of BAPCPA, insofar as consumer bankruptcy was concerned, was to "ensure that debtors repay creditors the maximum they can afford."  H.R. Rep. No. 109-31, pt. 1, at 2 (2005), U.S. Code Cong. & Admin. News 2005, pp. 88, 89.  BAPCPA also included various consumer protection reforms.  It "allows debtors to shelter from the claims of creditors certain education IRA plans and retirement pension funds."  *Id*.  BAPCPA also "expands a debtor's ability to exempt certain tax-qualified retirement accounts and pensions."  *Id*. at 104.  In explaining the impact of BAPCPA, Congress stated that "[t]he new property-value limitations could make more money available to creditors in some cases, while the exemptions on some retirement . . . savings generally would make less money available."  *Id.* at 115.

In regard to retirement savings, Congress clearly intended to strike a balance between protecting debtors' ability to save for their retirement and requiring that debtors pay their creditors the maximum amount they can afford to pay.  This balance is best achieved by permitting debtors who are making contributions to a Qualified Plan at the time their case is filed to continue making contributions, while requiring debtors who are not making contributions at the time a case is filed to commit post-petition income which becomes available to the repayment of creditors rather than their own retirement plan.  To conclude otherwise encourages the improvident behavior that BAPCPA sought to discourage.  If the bankruptcy court is affirmed, debtors who were not contributing to their tax qualified plan and borrowing against their own retirement savings may file bankruptcy, repay themselves, and, once the loan is repaid, start contributing again to their own retirement savings.  Allowing debtors to do so would tip the delicate balance struck by BAPCPA impermissibly in favor of debtors.  On the other hand, allowing debtors who are making

9

contributions at the commencement of a case to continue making those contributions furthers the goal of encouraging retirement savings. Limiting these protections to contributions in place at the time debtors file their petitions also protects the goal of ensuring that debtors pay creditors the maximum amount debtors can afford to pay.[1]

## B.  Disposable Income and Projected Disposable Income

The bankruptcy court also erred in confirming the Debtors' proposed plans because the plans do not comply with the projected disposable income requirement of § 1325(b)(1)(B). Under that section, if the chapter 13 trustee or an unsecured creditor objects to confirmation of a debtor's chapter 13 plan, a court may not confirm the plan unless the debtor pays unsecured creditors the full value of their claims or "the plan provides that all of the debtor's *projected* disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(A) and (B) (emphasis added). The bankruptcy court must calculate the debtor's projected disposable income and ensure that the proposed plan applies the entire amount to pay unsecured creditors in order to confirm the plan over an objection by the trustee or an unsecured creditor.

The term "projected disposable income" is not defined by the Bankruptcy Code; however, the United States Supreme Court recently concluded that a forward-looking approach should be taken whereby "projected disposable income" is calculated based on both debtor's circumstances as of confirmation, and on "changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation." *Hamilton v. Lanning*, __ U.S. __, 130 S. Ct. 2464, 2478 (2010); *see also Darrohn v. Hildebrand (In re Darrohn)*, No. 095499, __ F.3d __, 2010 WL 2852251 (6th Cir. July 22, 2010) (relying on *Lanning* and holding that the bankruptcy court violated § 1325 when it failed to consider debtor's changed circumstances in calculating "projected disposable income").

---

[1] The dissent argues that the majority ruling "unfairly discriminates against low income debtors in favor of high income debtors." The dissent fails to provide any support for this conclusory statement. The majority notes that its ruling does not discriminate between high and low income filers. The opinion states only that debtors who are not making contributions on the date of filing cannot use income which becomes available after a 401(k) loan is repaid, to start making contributions to a retirement plan. The majority opinion does not either expand or narrow the availability of § 541(b)(7) and it does not discriminate against any class of debtors.

Because repayment of a 401(k) loan during the life of the plan can be reasonably anticipated at the time of confirmation, the Panel concludes that post-petition income which becomes available after 401(k) loans are repaid must be considered as projected disposable income available to unsecured creditors.

The Panel's conclusion that income which becomes available after 401(k) loans are repaid is projected disposable income which must be committed to the repayment of unsecured creditors, is also supported by two recent Court of Appeals' decisions out of the Fifth and Eighth Circuits.  *See Lasowski*, 575 F.3d 815; *Nowlin,* 576 F.3d 258.  Although these cases were decided prior to the Supreme Court's opinion in *Hamilton v. Lanning*, both courts used the forward-looking approach to determine that funds used to repay 401(k) loans constituted projected disposable income which must be used to pay unsecured creditors once the 401(k) loans were repaid.  Because the Supreme Court has adopted the forward-looking approach as the proper method of determining projected disposable income for purposes of § 1325(b)(1)(B), the Panel finds the Fifth and Eighth Circuit cases persuasive.

In *Nowlin*, at the time of filing, the debtor was making contributions to her 401(k) plan in the amount of $1,062.51 and monthly 401(k) loan repayments in the amount of $1,134.79.  The 401(k) loan would be repaid after two years.  Debtor's plan proposed continuing her 401(k) contributions and loan repayments, but did not propose increasing her chapter 13 plan payments by  $1,134.79 -- the amount which would become available after she completed repayment of her 401(k) loan.  The trustee objected to debtor's proposed plan on the grounds that the plan did not comply with the projected disposable income requirement of 11 U.S.C. § 1325(b)(1)(B) because it did not commit the funds which became available after the 401(k) loan was repaid to the payment of creditors.  *Nowlin*, 576 F.3d at 260-61.

The bankruptcy court sustained the trustee's objection and denied confirmation of debtor's plan holding that the debtor's failure to allocate ascertainable projected income to repayment of her creditors made her plan unconfirmable under 11 U.S.C. § 1325(b)(1)(B).  Both the district court and the Fifth Circuit Court of Appeals affirmed the bankruptcy court.  The Fifth Circuit concluded its opinion by stating:

11

The parties in this case dispute whether bankruptcy courts may consider a future event that is reasonably certain to occur at the time of projecting the debtor's disposable income. For the reasons stated, we conclude that bankruptcy courts may consider such events and adjust projections of disposable income accordingly. Because Nowlin's proposed plan did not include all of her "projected disposable income" in payments to creditors following the repayment of her 401(k) loan, which was reasonably certain to occur on or before the twenty-fourth month of her sixty-month plan, the bankruptcy court properly denied confirmation under § 1325(b)(1).

*Id.* at 267.

In *Lasowski,* the debtor was making both a 401(k) loan payment and a regular 401(k) contribution at the time she filed for bankruptcy. The 401(k) loan would be paid off within the first 13 months of her 60 month plan. The trustee objected to confirmation of the debtor's plan contending that debtor's failure to commit the additional income resulting from the repayment of her loans to her chapter 13 plan violated 11 U.S.C. § 1325(b)(1)(B). The bankruptcy court overruled the trustee's objection and confirmed the plan. *Lasowski*, 575 F.3d at 818. The Eighth Circuit BAP reversed the bankruptcy court and the Eighth Circuit Court of Appeals affirmed the Eighth Circuit BAP. The Court of Appeals stated:

The court in *Nowlin* thus affirmed a bankruptcy court's denial of confirmation when a debtor's plan failed to take into account the reasonably certain future termination of the debtor's 401(k) loan repayments during the term of the debtor's proposed plan. Similarly here, even if Lasowski is correct that it is appropriate for her to exclude the entire $150 she is currently repaying on her 401(k) loans from her disposable income on Form 22C, the bankruptcy court could not ignore, when calculating *projected* disposable income, that these payments would reduce to $100 per month after six months and end completely after thirteen months. Only by taking into account this fact could the bankruptcy court's determination of projected disposable income accurately reflect Lasowski's ability to pay her unsecured creditors over the course of her plan.

. . . .

Interpreting "projected disposable income" to recognize the reasonably certain future termination of loan repayments does not require Lasowski to propose a plan that changes the terms of her 401(k) loans. Nor does it deprive her of sufficient funds to repay the loans, for she is free to propose a tiered plan that increases payments to unsecured creditors after the 401(k) payments have ceased.

12

*Id.* at 819, 820.  The Court of Appeals reversed the bankruptcy court's confirmation of debtor's plan and remanded the case back to the bankruptcy court.

Pursuant to the Supreme Court case of *Hamilton v. Lanning*, "projected disposable income" is based on a debtor's circumstances at the time of confirmation as well as on "changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation."  130 S. Ct. at 2478.  The courts in *Nowlin* and *Lasowski* both found that termination of 401(k) loan payments during the life of a chapter 13 plan was a "reasonably certain future" event that must be considered in an analysis of a plan under § 1325(b)(1)(B).  *Lasowski*, 575 F.3d at 920; *Nowlin*, 576 F.3d at 267.  Consistent with these interpretations of "projected disposable income," the Panel concludes that to obtain confirmation of a chapter 13 plan, debtors are required to commit the income which becomes available after their 401(k) loans are repaid to the payment of unsecured creditors.

The dissent strays far from the narrow ruling of the majority opinion.  The dissent repeatedly argues that the majority opinion establishes an "irrebuttable presumption" that a debtor may never commence or increase contributions to a tax qualified retirement plan after confirmation of their Chapter 13 plan.  The majority opinion creates no such presumption.  The majority ruling only holds that 11 U.S.C. § 1325 (b)(1)(B) precludes confirmation of a Chapter 13 plan which provides as part of the plan, that income which becomes available after a 401(k) loan has been repaid, must be used to commence or increase contributions to a Qualified Plan.  There is nothing in the majority opinion that would prevent a debtor from making an argument after confirmation that a change in debtor's circumstances[2] justified committing income to a Qualified Plan.

---

[2]For e.g., the loss of employment, *In re Lavin*, 424 B.R. 558 (Bankr. M.D. Fla. 2010); or where a debtor has a medical condition that might hasten their retirement, *In re Jones*, No. 07-10902, 2008 WL 4447041 (Bankr. D. Kan. Sept. 26, 2008); or where a debtor is required to make a mandatory percentage contribution as a condition of employment.

### C.  Good Faith

Finally, the Trustee contends that the Debtors have not proposed their plans in good faith because they could pay substantially more into their plans once their 401(k) loans are repaid, but instead are seeking solely to contribute to their 401(k) plans to the detriment of their unsecured creditors.  The bankruptcy court made no findings of fact on this issue.  In light of the Panel's conclusion that the Debtors' proposed plans should not have been confirmed because they cannot commence making contributions to their 401(k) plans once the loans are repaid, the Panel need not reach the merits of the Trustee's appeal on the issue of good faith.

### V.   CONCLUSION

In conclusion, post-petition income which becomes available after a debtor repays a 401(k) loan is not excluded from property of the estate under § 541(a) and (b), is property of the estate in a chapter 13 case pursuant to § 1306(a), and is projected disposable income which must be committed to the chapter 13 plan pursuant to § 1325(b)(1)(B).  Once the Debtors, Seafort and Schuler, have repaid their 401(k) loans, the funds which become available must be committed to the plan for the repayment of unsecured creditors.

The bankruptcy court is reversed.  These cases are remanded for proceedings consistent with this opinion.

MARILYN SHEA-STONUM, Bankruptcy Appellate Panel Judge, dissenting.  This case is before the Panel on an appeal of the bankruptcy court's confirmation of the Debtors' chapter 13 plans.  Confirmation of plans is governed by 11 U.S.C. § 1325.  The Trustee has alleged that the Debtors' plans do not comply with § 1325(b)(1)(B), the "best efforts" requirement, which provides:

> (b)(1) If the trustee. . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
>
> . . . .
>
> > (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

The basis of the Trustee's objection is the assertion that the Debtors' plans do not apply all of their projected disposable income to the payment of unsecured creditors.  However, in framing this question, the Trustee masked her objection as something in addition to the best efforts analysis.  Relying on a series of statutory provisions that are not relevant to the best efforts determination, the Trustee urged the Panel to adopt an irrebuttable presumption that chapter 13 debtors who increase or commence contributions to retirement savings plans described in 11 U.S.C. § 541(b)(7) ("Qualified Plans") after their cases are filed are deemed not to be applying all projected disposable income to pay their unsecured creditors under their chapter 13 plans.  For chapter 13 debtors who were not making contributions to Qualified Plans ("Qualified Contributions") when they filed for bankruptcy, this would automatically foreclose any ability to make Qualified Contributions during the three to five year period that their chapter 13 cases will be pending.  Even for debtors who had been making Qualified Contributions prior to filing, this would cap their Qualified Contributions at those pre-filing levels.  In short, acceptance of the Trustee's argument gives rise to an irrebuttable presumption that the level of chapter 13 debtors' Qualified Contributions as of the filing of their cases is all that is necessary to the support of debtors and their dependents.  There simply is no mention of any such cap or fixed limit on Qualified Contributions in the relevant Bankruptcy Code

15

provisions.[1]  Because I am convinced that the Bankruptcy Code neither requires nor lends statutory support to the creation of such an irrebuttable presumption, I respectfully dissent.

The assertion in the majority opinion that their holding does not equate to the adoption of an irrebuttable presumption does not withstand examination.  The question raised in these appeals, reduced to its most basic form, is whether the Debtors are devoting all of their projected disposable income to fund their chapter 13 plans.  The bankruptcy court processed this *factual* inquiry, determined that the plans in both cases satisfied this statutory requirement, and, no other objections remaining outstanding, confirmed the plans.  The majority does not find that the bankruptcy court's factual determination was incorrect based upon the Debtors' various individual circumstances.  Rather, the majority processes this factual inquiry by substituting a legal conclusion, i.e., that their reading of the Bankruptcy Code prohibits *per se* chapter 13 debtors from increasing Qualified Contributions over the life of their plans.

Resolution of this appeal should turn on the interpretation of the phrase "projected disposable income," which defines the "best efforts" test.  The Trustee instead initially framed the issue in this case to be about property of the estate, arguing from a variety of Code sections, including 11 U.S.C. §§ 541(a), 1306, and 1322.  These sections are not relevant to the issue now before the Panel because, although she does her best to obscure her statutory predicate, the Trustee's objection is based on § 1325(b)(1)(B), which does not reference property of the estate or any of these Code sections.

Since the Panel heard argument in this case, the Supreme Court decided *Hamilton v. Lanning (In re Lanning)*, ___ U.S. ___, 130 S. Ct. 2464 (2010), in which it determined that courts are to take a "forward-looking approach," rather than a mechanical approach, to the calculation of projected disposable income.  *Id.* at 2475, and the Sixth Circuit decided the direct appeal in *Darrohn v. Hildebrand (In re Darrohn)*, No. 09-5499, ___ F.3d ___, 2010 WL 2852251 (6th Cir. July 22, 2010), in which it applied *Lanning* to both the revenue and expense factors in the projected disposable

---

[1]For other purposes, Qualified Contributions are capped by ERISA.

16

income calculation.  As addressed in *Lanning* and *Darrohn*, the starting point for analyzing what is projected disposable income in any chapter 13 case is identified in 11 U.S.C. § 1325(b)(2):

> (2) For purposes of this subsection, the term 'disposable income' means current monthly income received by the debtor . . . . less amounts reasonably necessary to be expended–
>
>> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed;
>>
>> . . . .

11 U.S.C. § 1325(b)(2).  Because the Trustee did not raise the good faith of the Debtors in either case, *see infra*, her objection rests entirely on her assertion of an irrebuttable presumption.  In its starkest terms, that presumption is that contributions to Qualified Plans are *never* reasonably necessary to the debtor's maintenance or support, except to the extent that they are ongoing at the time of filing.  However, the definition of "disposable income," as augmented by § 541(b)(7), belies this assumption by explicitly providing:

> (b) Property of the estate does not include -
>
> . . . .
>
>> (7) any amount –
>>
>>> (A)  withheld  by  an employer from the wages of employees for payment as contributions
>>>
>>>> (i) to —
>>>>
>>>> [three different forms of retirement savings plans that qualify for tax deferment under the Internal Revenue Code of 1986]
>>>>
>>>> except that *such amount under this subparagraph shall not constitute disposable income* as defined in section 1325(b)(2)[.]

11 U.S.C. § 541(b) (emphasis added).  Central to the resolution of this appeal is determining the meaning of the final phrase that begins with "except" and will be referred to as the "hanging phrase."  Section 541(b)(7) is one of a number of BAPCPA amendments addressing debtors' Qualified Contributions and debtors' participation in Qualified Plans.  One thrust of these provisions was to

17

legislatively overrule decisions that had construed the Bankruptcy Code as prohibiting both unaltered repayment of loans from debtors' retirement plans and participation in such plans by debtors during the chapter 13 plan period. *See, e.g., Behlke v. Eisen* (*In re Behlke*), 358 F.3d 429 (6th Cir. 2004); *Anes v. Dehart* (*In re Anes*), 195 F.3d 177 (3d Cir. 1999); *Harshbarger v. Pees* (*In re Harshbarger*), 66 F.3d 775 (6th Cir. 1995); *In re Heffernan*, 242 B.R. 812, 818 (Bankr. D. Conn. 1999). By "expressly removing [401(k) contributions] from the definition of disposable income under § 1325(b), . . . Congress has implemented a policy of protecting and encouraging retirement savings." *In re Mati*, 390 B.R. 11, 17 (Bankr. D. Mass. 2008). As courts outside the Sixth Circuit repeatedly have observed,[2] chapter 13 debtors may increase or begin Qualified Contributions during the course of their chapter 13 plans.

Indeed, from the time BAPCPA was enacted five years ago until the majority's opinion in these two appeals, no court had adopted the interpretation advocated by the Trustee. The Trustee's interpretation strays far from the applicable Code provisions and reaches a harsh and uneven result. Adoption of that interpretation by the majority ignores the proof that these amendments provide of Congress' determination that retirement savings generally are reasonably necessary for consumer debtors.[3] As discussed *infra*, the majority's assertion that the Fifth and Eighth Circuits have

---

[2] *See, e.g., Nowlin v. Peake* (*In re Nowlin*), 576 F.3d 258 (5th Cir. 2009) (*see infra*); *In re Lavin*, 424 B.R. 558 (Bankr. M.D. Fla. 2010) (seeking relief under chapter 7 did not constitute abuse where debtor obtained employment post-petition and thereafter began making 401(k) contributions, because such amounts would not be disposable income available to creditors in a chapter 13); *In re Gibson*, No. 09-01196, 2009 WL 2868445, at *2 (Bankr. D. Idaho Aug. 31, 2009) ("Even if Debtors had not decided to begin making contributions to their 401(k) plan until after they filed their bankruptcy petition, the contributions would still not be classified as disposable income."); *In re Jones*, No. 07-10902, 2008 WL 4447041 (Bankr. D. Kan. Sept. 26, 2008) (refusing to find lack of good faith based on post-petition commencement of 401(k) contributions alone, where retirement plan changed post-petition so that employer would no longer contribute unless debtor also contributed); *Mati*, 390 B.R. 11, 17 (analyzing debtor's proposed plan, which provided for increased 401(k) contributions, under the § 1325(a)(3) good faith requirement and concluding that the "Debtor is merely taking advantage of what the law allows."); *In re Shelton*, 370 B.R. 861 (Bankr. N.D. Ga. 2007) (holding that date that debtor began contributions would be relevant to good faith, not to disposable income); *Baxter v. Johnson* (*In re Johnson*), 346 B.R. 256, 263 (Bankr. S.D. Ga. 2006) (debtors who increased their 401(k) contributions "may fund 401(k) plans in good faith, so long as their contributions do not exceed the limits legally permitted by their 401(k) plans."); *but see In re Prigge*, No. 09-61545, 2010 WL 81728, at *9 n.5 (Bankr. D. Mont. Mar. 4, 2010) (finding that debtors may *not* make 401(k) contributions during the life of a chapter 13 plan, regardless of when contributions commenced).

[3] In limiting its inquiry to 401(k) contributions, the majority ignores the potentially far-reaching consequences of its holding if applied to all Qualified Contributions. During oral argument, Trustee's counsel was adamant that there could be no increase in Qualified Contributions. The holding of the majority would be applicable to all forms of

interpreted § 1325(b)(1) to prohibit an upward change in Qualified Contributions from the filing date level is simply inaccurate.

The proper analysis of this issue is straightforward. Disposable income does not include any amount withheld as a Qualified Contribution. This exception from disposable income is found in the hanging phrase, which, by its reference to § 1325(b)(2), is necessarily forward-looking and makes no distinction between pre-filing and post-filing Qualified Contributions. To make sense of the hanging phrase, it is important to keep in focus that the issue on appeal is satisfaction of the best efforts requirement. In contrast, the Trustee's argument depends on property of the estate. In confirmation of chapter 13 plans, property of the estate is material to the best interests test, not the best efforts test; the Trustee did not argue in either case that the best interests requirement was not met, i.e., that the Debtors' plans do not propose payments in an amount at least equal to the non-exempt property that would be available to satisfy claims were the case to proceed in chapter 7. The hanging phrase explicitly provides that the Debtors' Qualified Contributions are not disposable income; its reference to § 1325(b)(2) is appropriately read as forward-looking. It contains no requirement that Qualified Contributions had to have been withheld before the case commenced and does not indicate that they are capped as of the date of filing. Because the Trustee failed to show that the plans do not provide that all of the Debtors' projected disposable income will be paid into their plans, the bankruptcy court did not err when it confirmed the Debtors' plans over the Trustee's contention that the best efforts test had not been satisfied.

The majority begins its analysis with § 541(a) rather than § 1325(b), even though the Trustee's objection is that the Debtors' plans do not satisfy the best efforts requirement. The

---

Qualified Plans identified in § 541(b)(7). Such a strict application of the irrebuttable presumption that abrogates the bankruptcy court's inquiry into reasonably necessary expenses would prohibit increases in contribution that are a condition of debtors' employment, which would occur if a debtor received a raise in a position that required mandatory percentage contribution, thereby increasing the actual dollar amount of the debtor's contributions. Such a result would actually be more restrictive of chapter 13 debtors' ability to participate in Qualified Plans than some pre-BAPCPA case law. *See, e.g., New York City Employees Ret. Sys. v. Sapir (In re Taylor)*, 243 F.3d 124 (2d Cir. 2001) (providing that whether contributions are mandatory should be a factor in the bankruptcy court's assessment of whether they are reasonably necessary); *In re Davis*, 241 B.R. 704, 707 (Bankr. D. Mont. 1999) ("[E]xpenses over which the debtor has no control, or which are necessary to the debtor's employment, are undoubtedly 'reasonably necessary.'") (quoting 8 *Collier on Bankruptcy*, § 1325.08[4][b][i])). Such a result is certainly at odds with Congress' intent to overrule pre-BAPCPA case law, which it viewed as overly restrictive of debtors' ability to participate in Qualified Plans.

majority's analysis first addresses the question of whether post-petition Qualified Contributions are property of the estate without explaining what relevance this question has to confirmation of a chapter 13 plan, stating "the bankruptcy court concluded that . . . contributions which commence *after* the filing of the case must also be excluded from property of the estate." However, this statement is in error; the bankruptcy court had no need to address or resolve the question of whether such contributions are property of the estate. Rather, the bankruptcy court addressed only how such Qualified Contributions should be treated in determining what is projected disposable income, which is the only question on appeal. Continuing with a discussion of property of the estate, the majority then considers § 1306, which defines property of the estate in a chapter 13 case. Noting the fact that Congress did not reference Qualified Contributions in § 1306, the majority concludes that Congress did not intend for Qualified Contributions "to be excluded from property of the estate or from projected disposable income." The first prong of that statement is correct. The second prong assumes a conclusion that goes beyond the operation of § 1306. Section 1306 does not discuss, define, or address either projected disposable income or disposable income in any way. Relying on § 1306 as any indication of congressional intent on the question of disposable income is a *non sequitur*.[4] Further, if Congress had intended to create the Trustee's irrebuttable presumption, that presumption would logically have been included in § 1325(b) or, at a minimum, in § 541(b)(7).[5]

---

[4] Section 1306(a)(1) includes "all property . . . the debtor acquires after the commencement of the case, but before the case is closed, dismissed, or converted to a case under chapter 7, 11 or 12 . . . .". The debtor's post-petition wages are included in property of the estate by § 1306(a)(2). Qualified Contributions are taken from the debtor's wages and are therefore property of the estate under § 1306(a)(2). However, as discussed above, what constitutes "property of the estate" is not relevant to § 1325(b)(1)(B), the Code section controlling confirmation. As § 1306(b) provides, the debtor remains in possession of all property of the estate, except as otherwise provided in the plan. The plan, in turn, must provide for the distribution of all projected disposable income to creditors. There is no requirement that all property of the estate must be made available to creditors in a chapter 13 case. The definition of the estate remains important in a chapter 13 case. For example, the estate continues to define part of the scope of the automatic stay. 11 U.S.C. § 362(a)(3). However, it is not relevant to the debtor's projected disposable income, which is the inquiry of § 1325(b)(1)(B).

[5] When Congress established two categories of consumer debtors based upon whether their income is determined to be above or below median income, it clearly articulated the two classifications and further eschewed the establishment of any irrebuttable presumptions, instead allowing for consideration of numerous individual facts and circumstances. 11 U.S.C. § 707(b)(3). Certainly in providing for those two classifications, Congress was dealing with a rational distinction between consumer debtors of differing income levels. In contrast, under the majority's acceptance of the Trustee's argument, debtors would be classified, at best, by random circumstances and at worst, as an inverse measure of their need to begin retirement savings. To put it mildly, this irrebuttable presumption raises due process questions

20

The majority also reasons that if Congress had intended to exclude Qualified Contributions from projected disposable income, it could have easily tacked the words "or projected disposable income under § 1325(b)(1)(B)" to the end of the hanging phrase in § 541(b)(7).  This suggestion ignores the fact that projected disposable income is not defined in § 1325(b)(1).  Rather, the term "disposable income" has been specified *not* to include Qualified Contributions and with regard to the statutory phrase, projected disposable income, the word "projected" is to be given its ordinary meaning. *Lanning*, 130 S. Ct. at 2471 ("When terms used in a statute are undefined, we give them their ordinary meaning.").  Indeed, the majority's suggestion that Congress should have tacked their phrase onto § 541(b)(7) brings into clearer focus their erroneous assumption that "projected disposable income" has some meaning different than a projection of "disposable income" through application of § 1325(b).  Application of § 1325(b) calls for a case-specific analysis of what is needed for the support of the debtor and the debtor's dependents.

The majority then reaches the question of disposable income and cites two purportedly supporting cases.  However, neither of these cases support the majority's holding.  Although many cases (*see supra* note 2) have similar facts to the cases in this appeal, there are no cases that have reached the conclusion that a debtor may make Qualified Contributions during the course of a chapter 13 bankruptcy only to the extent that such contributions were ongoing at the time the petition was filed.

---

which the majority simply ignores.  *See Vlandis v. Kline*, 412 U.S. 441, 447, 93 S. Ct. 2230, 2234 (1973) ("Statutes creating permanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments.").

    In *Darrohn*, the Sixth Circuit took note of the information that consumer debtors are directed to provide on Form B22C.  That form was developed by the Administrative Office of the United States Trustee program in order to implement the Means Test.  Part VI of that form directs debtors to "[l]ist and describe any monthly expenses, not otherwise stated in this form, that are required for the health and welfare of you and your family and that you contend should be an additional deduction from your current monthly income under § 707(b)(2)(A)(ii)(I)."  Part VI thus provides debtors with the opportunity to describe, *inter alia*, circumstances that justify maximizing their Qualified Contributions beyond amounts reported in item 31 of Form B22C.  As the Sixth Circuit observed in *Darrohn*, "[w]hile much of the [Supreme] Court's analysis in *Lanning* focused on the income side of the projected disposable income formulation, the holding clearly applied to 'changes in the debtor's income *or expenses* . . . .'"  *Darrohn,* 2010 WL 2852251, at *5 (emphasis added in the Sixth Circuit opinion) (citation omitted).  Neither *Lanning* nor *Darrohn* support adoption of the Trustee's irrebuttable presumption with respect to a particular category of expense.  And I note again the presumption is not articulated in the Bankruptcy Code.

In *Nowlin v. Peake (In re Nowlin)*, the debtor was contributing to her 401(k) plan and repaying a 401(k) loan at the time of filing. 576 F.3d 258 (5th Cir. 2009) (cited in *Lanning*, 130 S. Ct. at 2474, 2475. However, the Fifth Circuit did not disturb the bankruptcy court's holding that "after Nowlin had paid off her 401(k) loan, *she could contribute an additional $187.49 to her 401(k) plan*, which would bring her monthly 401(k) contributions to the maximum of $1,250.00 per month." *Nowlin,* 576 F.3d at 261 (emphasis added). Rather, the Fifth Circuit agreed with the district and bankruptcy courts' conclusion that the *additional* amounts that would be available to the debtor after repaying her 401(k) loan, beyond what was used to maximize her 401(k) contributions, should be included in projected disposable income that must be distributed to unsecured creditors. *Nowlin* is inconsistent with the majority's position. In *Nowlin*, the debtor was permitted to increase her Qualified Contribution to the maximum allowable under her employer's plan. It was only amounts in excess of that payment that were considered projected disposable income and required to become part of the chapter 13 payment after the 401(k) loan was repaid. *Id.*

Similarly, in *McCarty v. Lasowski (In re Lasowski)*, the debtor was making payments on a 401(k) loan that would be fully repaid during the chapter 13 plan. 575 F.3d 815, 817-18 (8th Cir. 2009). In that case, the record is silent as to whether or not the debtor proposed to maintain, commence, or increase her Qualified Contributions to a Qualified Plan during the course of her bankruptcy. *Id.* The Eighth Circuit reached only the question of whether the "calculation of a debtor's projected disposable income can take into account changes in the debtor's financial circumstances that are reasonably certain to occur during the term of the debtor's proposed plan." *Id.* at 819. That question was resolved by the Supreme Court's holding in *Lanning* and is not at issue in this case. *Lasowski* does not support the majority's irrebuttable presumption that a debtor may not use income available after repayment of a 401(k) loan to commence or increase Qualified Contributions.

The Supreme Court held in *Lanning* that "the court may account for changes in the debtor's *income or expenses* that are known or virtually certain at the time of confirmation." 130 S. Ct. at 2478 (emphasis added). Application of *Lanning* does call for consideration of how to deploy the portion of the debtors' wages once the 401(k) loans have been repaid. The trial court determined,

22

implicitly at least, that the Debtors' proposed Qualified Contributions are necessary to the support of Debtors or their dependants.  The bankruptcy court therefore correctly took into account fluctuations in the Debtors' disposable income resulting from the completion of the 401(k) loan repayments and the changes to the Debtors' Qualified Contributions.  The majority does not defer to the trial court's factual determination, not only in these two cases, but would substitute its across the board determination in all future cases.

## Legislative History

The language now the source of dispute in these cases was added to the Bankruptcy Code as part of BAPCPA.  The majority emphasizes Congress' intention to ensure "debtors repay creditors the maximum they can afford," (H.R. Rep. No. 109-31, pt. 1, at 2 (2005), U.S. Code Cong. & Admin. News 2005, pp. 88, 89) in support of its holding, claiming its decision mirrors the clear legislative intent of BAPCPA.  It is an unfortunate fact that there exists virtually no real legislative history for the detailed provisions of BAPCPA.  *See* Susan Jensen, *A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 Am. Bankr. L.J. 485 (2005).

Because the plain meaning of the statute unambiguously provides that Qualified Contributions are excluded from disposable income, as discussed above, there is no need to consider legislative history, were any such history available for the provisions under consideration.  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, 1947 (2000) ("[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.") (internal quotation marks omitted).  Moreover, the legislative history does not evince congressional intent on this specific issue.  The language of the statute shows that Congress appears to have balanced the competing policy priorities of (1) ensuring that unsecured creditors receive the most debtors can afford to pay and (2) promoting participation in Qualified Plans.  As BAPCPA determined how that was to be done, i.e., by allowing chapter 13 debtors to exclude Qualified Contributions from

23

disposable income, it is not appropriate for the majority to determine that Congress has not struck
the right balance between competing policies.[6]  As succinctly stated elsewhere:

> Congressional intent on this point is sufficiently plain and is a matter of policy; as
> such, it does not lead to an absurd result.  The goal to expand retirement savings is
> clear and the result is reasonable. Accordingly, amounts withheld from wages for
> contribution to a qualified retirement plan are not included in § 1325(b)(1)'s
> calculation of projected disposable income.

*In re Shelton*, 370 B.R. at 866.

The majority concludes that to allow debtors to start or to increase Qualified Contributions
after repaying a 401(k) loan, but while still in the chapter 13 case, would tip "the delicate balance
struck by BAPCPA impermissibly in favor of debtors."  This assertion suggests that chapter 13
debtors would use the exclusion created by § 541(b)(7) to begin or increase Qualified Contributions
in order to abuse the bankruptcy process and avoid paying their unsecured creditors.  It also assumes
that this abuse can be fairly prevented by the irrebuttable presumption the majority now adopts.
However, in light of the clear statutory language, the balancing of competing policy interests is not
appropriately done by the courts.  *See SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 468,
60 S. Ct. 1044, 1059 (1940) ("[The bankruptcy court's] function is to make an equitable distribution
of the estate among the creditors, but the principle has not been applied in the sense that the court
may, in its better judgment, refuse to award the relief which Congress has accorded the [debtor].");
*Gonzalez-Ruiz v. Doral Fin. Corp.* (*In re Gonzalez-Ruiz*), 341 B.R. 371, 383 n.15 (B.A.P. 1st Cir.

---

[6]The majority opinion states:

> In regard to retirement savings, Congress clearly intended to strike a balance
> between protecting debtors' ability to save for their retirement, and requiring that
> debtors pay their creditors the maximum amount they can afford to pay.  *This
> balance is best achieved by permitting debtors who are making contributions to a
> 401(k) plan at the time their case is filed, to continue making contributions, while
> requiring debtors who are not making contributions at the time a case is filed to
> commit post-petition income which becomes available, to the repayment of
> creditors rather than their own retirement plan.*

*See supra* (emphasis added).

2006) ("[A] court may not alter rights that a debtor has been granted by Congress . . . by determining that those rights are unfair or inequitable based on the court's distaste for Congress' choices.").

Abuse of the bankruptcy process is prohibited by other provisions of the Bankruptcy Code and would not be abetted by any ruling this Panel makes in these cases. *See* 11 U.S.C. § 1307; 11 U.S.C. § 1325(a)(3), (a)(7); *Alt v. United States* (*In re Alt*), 305 F.3d 413, 419 (6th Cir. 2002) ("The key inquiry [in a motion to dismiss a chapter 13 case] is whether the debtor is seeking to abuse the bankruptcy process."). Predictably, most of the cases considering a debtor's proposed commencement or increase of Qualified Contributions have focused on whether the facts of the particular case showed a lack of good faith. *See supra* note 2. There is no reason to think that abuse of the bankruptcy system is now unchecked because BAPCPA statutorily overruled earlier case law that applied blanket prohibitions. What BAPCPA did not change was the good faith requirement. The majority's reasoning does not explain why a court should refuse to confirm a plan that a debtor has proposed in good faith if it provides for the debtor's best efforts to repayment of creditors, meets the "best interests of creditors" test of § 1325(a)(4), and is otherwise in compliance with the requirements of the Bankruptcy Code, simply because it involves an increase in the debtor's Qualified Contributions.

As other cases illustrate, debtors frequently have unusual circumstances either before or after their bankruptcy cases begin. The totality of the circumstances approach to the good faith inquiry is a more effective way of balancing two congressional purposes – to prevent abuse and to encourage retirement savings – than is the Trustee's irrebuttable presumption that the majority now adopts.

*In re Lavin*, for example, involved a debtor who had at one time made large Qualified Contributions, but reduced them as his debts rose and he struggled to pay creditors. He eventually stopped making the contributions and, after losing his job, filed for bankruptcy. He was able to find employment post-petition and began making very large contributions (19% of his salary) because he suffered from a medical condition that would force him to retire early due to disability. *Lavin*, 424 B.R. 558, 561-62. Under the majority's holding, this debtor would not be able to make any Qualified Contributions during the life of his plan because he was unemployed at the moment of his bankruptcy filing and consequently not contributing to a Qualified Plan. The bankruptcy court

25

would have no discretion to make an exception to this rule that the Trustee and the majority have conjured. Indeed, all debtors whose bankruptcy filings had been precipitated by an ongoing job loss would be absolutely prohibited from making Qualified Contributions from their post-petition employment wages, even if they had been making those contributions, or had not been eligible to make contributions, at their prior employment.

Similarly, in *In re Jones*, the debtors started making Qualified Contributions to the wife's Qualified Plan after filing. The court found there was no absence of good faith based on the circumstances:

> Both Debtors are fast approaching retirement age, and also have medical conditions that might hasten their retirements. After Debtors filed for bankruptcy, the Wife's employer changed its retirement plan from one where it made contributions even if the Wife did not to one where it would match the Wife's contributions but otherwise make none.

*Jones*, No. 07-10902, 2008 WL 4447041, at *5 (Bankr. D. Kan. Sept. 26, 2008). Under the majority's interpretation, these debtors' plans could not be confirmed. These cases do not evidence the abuse that Congress sought to eradicate with BAPCPA. *See also In re Gibson*, No. 09-01196, 2009 WL 2868445, at *3 (Bankr. D. Idaho Aug. 31, 2009) (comparing factual circumstances relevant to debtors' good faith in various cases involving post-petition increase or commencement of Qualified Contributions).

The suggestion that "[t]here is nothing in the majority opinion that would prevent a debtor from making an argument after confirmation that a change in debtor's circumstances justified committing income to a Qualified Plan" ignores several obvious points. *See supra.* First, that is precisely the type of factual inquiry that is appropriately addressed in the confirmation process pursuant to § 1325(b)(2)(A)(i), but the majority's adoption of the Trustee's reading that §§ 541(a)(1) and 1306 conclusively inform the amount of Qualified Contributions that debtors may allot in constructing chapter 13 plans inappropriately stops that inquiry at the starting block. The majority does not articulate why their method of calculating projected disposable income in the context of a post-confirmation motion to amend a chapter 13 plan would not be met with precisely the same

26

brick-wall response. Indeed, given our recent holding in *In re Storey*, 392 B.R. 266 (B.A.P. 6th Cir. 2008), which addressed the limits of relief appropriately granted pursuant to 11 U.S.C. § 1329, such a course of action would be ineffective with respect to evidence that could have been presented in the confirmation process.

The majority's rule, while preventing confirmation of good-faith debtors' plans, would not be an effective method of eradicating abuse. High-income debtors who had made large Qualified Contributions as their debts mounted would be able to continue such payments during their bankruptcy regardless of whether they had any compelling reason to make large contributions. On the other hand, debtors who had reduced or stopped their Qualified Contributions in an attempt to pay creditors and avoid bankruptcy, like the debtor in *Lavin*, would be prohibited from contributing – truly a part of the "fresh start" for older debtors nearing retirement – until after they had completed their plans. *See, e.g., In re Devilliers*, 358 B.R. 849, 865 (Bankr. E.D. La. 2007) ("Congress has determined that contributions to a qualified retirement account are, by their very nature, reasonable and necessary. By providing for a debtor's eventual retirement, retirement contributions become part of debtor's fresh start."). The majority's ruling also offers no accommodation to debtors for whom changed circumstances make new or increased post-petition Qualified Contributions reasonable and necessary.

The majority's fear of growing gamesmanship presumes that courts, trustees, and creditors are unable to recognize unfair manipulation of the bankruptcy system. It replaces the bankruptcy courts' discretion and judgment with an irrebuttable presumption that is not articulated in the Bankruptcy Code. Furthermore, it unfairly discriminates against low-income debtors in favor of high-income debtors. High-income debtors are more likely to have made Qualified Contributions prior to filing their bankruptcy petitions and more likely to have the ability to engage in pre-petition planning, such as by beginning their Qualified Contributions in anticipation of the filing. Low-income debtors, by comparison, are less likely to have made Qualified Contributions pre-petition and will probably be the most frequently disadvantaged were the majority's holding in this case to

become binding.[7]  The majority's holding also does not prevent a debtor from dramatically increasing Qualified Contributions pre-petition so as to meet the requirement that contributions be in place before the petition is filed.  Of course, such debtors may fail to show the good faith required by the Bankruptcy Code.  However, the good faith requirement is also well-suited to avert abuse commenced after the petition date.  *See, e.g., Soc'y. Nat'l. Bank v. Barrett* (*In re Barrett*), 964 F.2d 588, 592 (6th Cir. 1992) (holding that a bankruptcy court should consider many pre- and post-petition factors in making a good faith determination).

In fact, the good faith analysis that courts already apply to confirmation of plans would apply well to situations like those presented here.  Though Qualified Contributions are not part of disposable income, they are still relevant to good faith:

> While it is apparent that Congress removed certain streams of income from being considered disposable income, it does not necessarily follow that Congress intended to handicap the courts' good faith inquiries or unintentionally create a proverbial "loophole" . . . .  BAPCPA expressly limited the application of § 541(b)(7) to one particular paragraph, § 1325(b)(2) . . . .  Had Congress sought to soften the good faith requirement, a statement to that effect is conspicuously absent.

*Shelton*, 370 B.R. at 867; *see also Jones*, 2008 WL 4447041, at *4 (weighing debtors' post-petition commencement of retirement savings as a factor in analysis of good faith); *but see Johnson*, 346 B.R. at 263 ("Debtors are not required to contribute [retirement savings contributions] to their Chapter 13 plans.  Consequently, in determining good faith under § 1325(a)(3), I may not consider them.").  Courts should consider the totality of the circumstances to determine debtors' good faith.  *See Barrett*, 964 F.2d at 591 (citing "totality of the circumstances" test for good faith inquiry in a chapter 13 case).  A debtor's proposal to increase or to begin Qualified Contributions post-petition is one

---

[7] *See, e.g.*, Regina T. Jefferson, *Redistribution in the Retirement System: Who Wins and Who Loses?*, 52 How. L.J. 283, 299 (2010) ("Participation rates among low-income workers in the private retirement system is relatively low, and continues to decline.").  *See also* Hatty Yip, *Double Whammy: How the New Credit Card Nondischargeability Provision and the New Means Test Hit Single Mothers Over the Head*, 15 Buff. Women's L.J. 33 (2006) ("To the extent that lower income debtors . . . [proceed without counsel] they will get caught more than debtors who have the means to consult attorneys.  Most of the 'traps' are manageable for debtors who obtain competent legal advice pre-petition.  Low income debtors get caught because no one warned them to either wait to file or not to do certain things before they file." (quoting Bankruptcy Judge Maureen Tighe)).

of many circumstances that may be considered by a court assessing the debtor's good faith.  *See, e.g.,*
*Shelton,* 370 B.R. 861 (holding that plan proposing large payments to secured creditors and large
contributions to retirement savings, but 0% payout to unsecured creditors, invites scrutiny of the
debtor's good faith); *Gibson*, 2009 WL 2868445, at *3 n.5 (suggesting a situation in which a debtor
proposes to commence, rather than increase, retirement contributions post-petition may merit
heightened scrutiny).  However, the court might be equally suspicious of a high-income debtor who
seeks to maintain excessive Qualified Contributions throughout the bankruptcy process, although
such a debtor would not be affected by the majority's holding in this case.  In either situation, upon
an objection, the court would have to determine how much weight to give this factor and could
consider the needs of individual debtor's with respect to retirement savings, such as those noted in
the cases cited in note 2, *supra*.  Among the circumstances that bankruptcy courts have considered
are:

1. Debtors' proximity to retirement, by virtue of age or medical condition;
2. Debtors' prior retirement savings and whether amounts already saved could be sufficient to support the debtors after retirement;
3. The likely cost of living during debtors' retirement, considering medical conditions and other relevant concerns;
4. Whether debtors made contributions previously and decreased them due to job loss, reduced income, or attempts to pay creditors;
5. Whether debtors are contributing amounts in excess of what their employers will match, if an employer offers matching contributions, e.g., whether requiring debtors to forego some of their contributions would essentially force them to forego an employer-sponsored benefit;
6. Whether debtors have recently experienced a change in circumstances relevant to their retirement savings (new options from employer, new employer plan, new employer, sudden decrease in value of retirement savings, etc.); and
7. The relative percentages of debtors' income being contributed to retirement savings and payments to creditors.

However, it does not appear that the issue of good faith is properly before the Panel in these cases.

29

**Good Faith**

The Trustee asserts that the Debtors have not proposed their plans in good faith, but this argument was raised for the first time on appeal. Generally, issues raised for the first time on appeal are not properly determined by the appellate court. *Lockhart v. Napolitano*, 573 F.3d 251, 261 (6th Cir. 2009). The Trustee claims that the following language, in the objections to confirmation, makes clear reference to Debtors' good faith:

> In essence, the debtors are proposing that unsecured creditors chip in some $9,790.00 for Mr. Schuler's retirement. The plan must be amended to show that plan payments will increase by the full amount of the [401(k)] loan payment in the month after the loan is paid off.

> Schedule I reflects a deduction for a 401K/retirement loan payment. The loan will be paid in full in June 2010. The plan must be amended to show that plan payments will increase by $255 per month starting in July 2010.

These statements most directly reference the calculation of disposable income and do not mention good faith. This issue was therefore not preserved in these appeals.

Appellate courts may consider arguments first presented on appeal in "exceptional cases or particular circumstances, or when the rule [against doing so] would produce a plain miscarriage of justice." *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993) (*cited in McFarland v. Henderson*, 307 F.3d 402, 407 (6th Cir. 2002)). The most common instance is when the issue is purely one of law that is presented to the appellate court with sufficient clarity and completeness that it may be resolved on appeal. *Foster,* 6 F.3d at 407 (noting that the exception to the rule that appellate courts will not consider issues first presented on appeal "is most commonly applied where the issue is one of law, and further development of the record is unnecessary"). The issue of good faith, in contrast, is a fact-specific inquiry not appropriately addressed for the first time on appeal, especially where the bankruptcy court record shows no discovery and the court made no factual findings on the issue. *See Hardin v. Caldwell* (*In re Caldwell*), 851 F.2d 852, 858 (6th Cir. 1988) (identifying good faith as a factual finding reviewed for clear error). The Trustee argues that all the facts necessary to determine that the Debtors lack good faith are properly before the Panel based on the bankruptcy

court's record.  Because the determination of a debtor's good faith is a factual determination based on the totality of the circumstances, this is simply not the case.  "[N]o one factor should be viewed as being a dispositive indication of the debtor's good faith. . . .  [T]he 'totality of the circumstances' means what it says:  It exacts an examination of all the facts in order to determine the bona fides of the debtor."  *Id.* at 860 (citation omitted).  Such an examination not having been sought from the bankruptcy court, the Panel may not now consider the Trustee's argument regarding the Debtors' good faith.

For these reasons, I would affirm the ruling of the bankruptcy court.